# Richmond.

## FARMERS' BENEVOLENT FIRE INSURANCE ASSOCIATION OF FRANKLIN COUNTY v. KINSEY.

### February 5, 1903.

1. DEMURRER—*Action on Insurance Policy—Provisions of Charter—Code, Section 3251.*—The charter of an insurance company under which a policy is issued is not made a part of the declaration by filing the original policy, or a sworn copy thereof, with the declaration, under the provisions of section 3251 of the Code, as amended, under which the action is brought, and hence the provisions of such charter cannot be considered on demurrer.

2. PLEADING—*Grounds of Defence—What May Be Shown—Premature Action.*—The objection that an action has been prematurely brought cannot be relied on where the defendant has stated his grounds of defence under section 3249 of the Code, and that objection is not specified.

3. FORFEITURES—*Waiver—Revival of Forfeiture.*—Forfeitures are not favored, and courts are alert to take advantage of any circumstance that indicates an election to waive a forfeiture, or any agreement to do so upon which a party has relied and acted; and, where the right to rely upon a forfeiture has been once waived it · is extinguished, and cannot be revived.

4. INSURANCE—*Breach of Condition of Policy—Waiver.*—Any acts, declarations, or course of conduct by an insurer, with knowledge of the facts constituting a breach of a condition in a policy, recognizing and treating the policy as still in force, and leading the insured to regard himself as still protected thereby, will amount to a waiver of the forfeiture by reason of such breach, and estop the company from setting up the same as a defence when sued for a subsequent loss; and it is always open to the insured to show such waiver, or just and reasonable grounds to believe that a forfeiture would not be exacted.

5. INSURANCE—*Forfeiture—Non-Payment of Assessments—Further Assessments—Waiver.*—If a forfeiture of an insurance policy for non-

payment of assessments is relied on, the fact that subsequent
assessments are made and received by the company, without
making any reference to the non-payment of the prior assessments,
is evidence to show a waiver of the forfeiture, and for that pur-
pose, should be submitted to the jury under proper instructions.

6. APPEAL AND ERROR—*Verdicts—Erroneous Instructions—Harmless
Error.*—This court will not set aside a verdict simply because erro-
neous instructions were given, if it can see from the whole record
that, even under correct instructions, a different verdict could not
have been rightly found, or that the exceptant could not have been
prejudiced by the erroneous instructions.

Error to a judgment of the Circuit Court of Franklin county,
rendered July 26, 1901, in an action of trespass on the case in
assumpsit, wherein the defendant in error was the plaintiff, and
the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*S. A. Anderson,* for the plaintiff in error.

*Dillard & Lee,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This is an action of assumpsit brought by the defendant in
error, Emma B. Kinsey, against the plaintiff in error, the
Farmers' Benevolent Fire Insurance Company of Franklin
county, on a policy of insurance issued by the Association to
the plaintiff, to recover the value of certain property, covered
by the policy, which was destroyed by fire on the 19th day of
February, 1901.

The first assignment of error is to the action of the trial
court in overruling a demurrer to the declaration; the conten-
tion on that assignment being that, by Article III. of its char-
ter, the Association is allowed sixty days, after the happening
of a fire, in which to pay the loss, and that the action was
brought before the expiration of that period. Without conced-
ing that the article in question is susceptible of that construc-

tion, it is sufficient to say that the charter constitutes no part of the declaration, and, therefore, its provisions cannot be considered on demurrer. The action is brought under the statute, which only prescribes that the original policy, or a sworn copy thereof, shall be filed with the declaration. Code, section 3251 (amended, Acts 1895-'6, p. 707).

To so construe that requirement as to make it embrace the charter and by-laws of an insurance company, on the theory that they are parts of the contract of insurance, would, in practice, lead to great inconvenience, and impose on the insured conditions with which, in many instances, he would be unable to comply. The policy is in his possession, and there can be no hardship in requiring him to file the original or a sworn copy with his declaration; but it is otherwise with respect to the charter and by-laws. They are in the custody of the adverse party, and in case of a foreign insurance company are even beyond the limits of the State. That view of the statute cannot be maintained.

There was no error in overruling the demurrer.

The case was submitted to the jury on a plea of *non assumpsit*, and a special plea, and there was a verdict and judgment for the plaintiff, which judgment this court is now asked to review.

On the trial the defendant again sought to interpose the defence that the action was prematurely brought. But in the statement of its grounds of defence, filed under section 3249 of the Code, that objection was not specified, and cannot be relied on.

The real question in the case arises on the contention of the defendant that at the date of the fire, the plaintiff, by reason of her default in paying an assessment made against her in accordance with the terms of the policy, had ceased to be a member of the Association, and had forfeited her right to demand payment for the loss. The clause of the policy for the alleged violation of which the forfeiture is exacted is as follows:

"That should the insured neglect to pay any assessment to meet the loss of property of any member of the Association; that at noon of the sixtieth day after the agent's notices have been issued the liability of this Association shall cease until such time as the assured be again restored to membership in the Association; but the treasurer shall collect the last assessment, it being the premium for past protection."

The plaintiff, on the other hand, maintains that if there was a forfeiture it has been waived by the Association by its general course of dealing with its policy-holders, and especially by its course of dealing with plaintiff, and that the Association is estopped by its conduct from setting up the forfeiture as a defence to this action.

The evidence relevant to those contentions is as follows: On the 19th day of September, 1896, plaintiff in error became a member of the Association, and took out the policy of insurance which is the basis of this action, on property destroyed by fire on the 18th of February, 1901. At the date of plaintiff's membership, G. W. Naff was the secretary and treasurer of the Association, and during his term of office plaintiff failed to pay an assessment against her, but he continued to send her notices of several subsequent losses, all of which assessments she neglected to pay, and he dropped her name from the books of the Association. When asked by plaintiff's brother how she could be restored to membership, Naff replied that she could be reinstated by paying up all past due assessments. Thereupon the assessments were paid, her name was again enrolled, and she was restored to membership in the Association.

It further appears that the Association did not press plaintiff for her assessments, but was in the habit of allowing her to pay them at her leisure.

About the first day of October, 1900, G. W. Naff had a loss, of which plaintiff was notified on the day following. She made an attempt to pay that assessment within the sixty days,

through her husband, who went to the office of the treasurer of the Association at Rocky Mount, but found no one there to receive the payment.

If it be conceded that, after this effort made in good faith on the part of the plaintiff to pay the Naff assessment—an effort which failed through the fault of the Association—the defendant had a right to declare the policy forfeited, that right accrued on the 2nd day of December, 1900, and was not enforced against her. On the contrary, the Association not only omitted to inform her of any intention on its part to insist on the forfeiture, but still farther lulled her into security by retaining her name on the books, and by assessing her with a loss which occurred, according to its theory, after she had forfeited all rights under her policy, and had ceased to be a member of the Association.

It appears that James Young, a member of the Association, sustained a loss in December, 1900. On the 27th of that month plaintiff was notified that she had been assessed for that loss. The assessment was paid after the fire of the 18th of February, 1901, but within sixty days from the time she was notified of the assessment. The Naff assessment, of $2.00, was paid on the 21st day of March, 1901, after the lapse of sixty days from the time she had notice of it. When notice of the Young assessment was sent to her, she was led to believe, and did believe, that she was still a member of the Association, and her property still insured. She had paid all assessments of the Association against her to date, including one made since the institution of this suit.

It further appears that B. L. Angle succeeded G. W. Naff as secretary and treasurer, and was so acting at the date of the Young loss, and subsequent transactions; that he was in the habit of paying assessments for his sister, and paid the Young and Naff assessments for her. He was asked if, in making these payments for the plaintiff, he was acting as her agent, to

which he replied that he hardly knew, but did not think he was, but that she approved and ratified his action in making the payments. . It also appears that Angle observed the habit and custom of the Association in sending these assessments to plaintiff, and was carrying out the general instructions of the president to send out assessments against all the members of the Association; but he received no specific instructions to assess the plaintiff, or any other particular person.

Upon that evidence the trial court submitted to the jury the question as to whether or not the Association had waived the forfeiture, or its conduct had been such as to estop it from setting up the forfeiture to defeat the plaintiff's recovery.

It is a fundamental principle of the law that forfeitures are not favored, and that courts are always on the alert to take advantage of any circumstances that indicate an election to waive a forfeiture, or any agreement to do so on which a party has relied and acted. The Supreme Court of the United States states the doctrine thus:

"Any agreement, declaration or course of action on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract." *Insurance Co.* v. *Norton*, 96 U. S. 234, 24 L. Ed. 689; *Insurance Company* v. *Eggleston*, 96 U. S. 572, 24 L. Ed. 841.

The same court in another case observes: "We do not accept the position that the payment of the annual premium is a *condition precedent* to the continuance of the policy. That is untrue. It is a condition subsequent only, the non-performance of which may incur a forfeiture of the policy, or may not, according to the circumstances. It is always open for the insured to show a waiver of the condition, or a course of con-

duct on the part of the insurer which gave him just and reasonable ground to infer that a forfeiture would not be exacted." *Thompson* v. *Insurance Company*, 104 U. S. 252, 26 L. Ed. 765; *Insurance Company* v. *Unsell*, 144 U. S. 439, 36 L. Ed. 496.

The same principle has been repeatedly recognized by this court. Thus in the leading case of *Georgia Home Insurance Company* v. *Kinnier*, 28 Gratt. 88, 108, it was held that the waiver of a forfeiture arising from the breach of a condition in a policy need not be in writing. And, in declaring what will amount to a waiver, it is said: "Any acts, declarations, or course of dealing by the insurers, with knowledge of the facts constituting a breach of a condition in the policy, recognizing and treating the policy as still in force, and leading the assured to regard himself as still protected thereby, will amount to a waiver of the forfeiture by reason of such breach, and estop the company from setting up the same as a defence when sued for a subsequent loss." See also *Insurance Company* v. *Panky*, 91 Va. 259, 21 S. E. 487.

"If a forfeiture of an insurance policy for non-payment of assessments is relied on, the fact that subsequent assessments are made and received by the company, without making any reference to the non-payment of the prior assessment, is evidence tending to show a waiver of the forfeiture, and, for that purpose, should be submitted to the jury under proper instructions.

"Where a right to rely upon a forfeiture has been once waived it is extinguished, and cannot be revived." *Monger* v. *Home Mutual Fire Ins. Co.*, 96 Va. 442, 31 S. E. 609.

The company in that case was of the same character as the defendant Association; and the provision in its charter as to the effect of the non-payment of assessments, was even more stringent than in this case. It is sought, however, to differentiate the case in judgment from others, on the ground that

Angle occupied the inconsistent position of agent for both plaintiff and defendant.

Recognizing the propriety of that doctrine as laid down by this court in *Ferguson* v. *Gooch*, 94 Va. 1, 26 S. E. 397, 40 L. R. A. 234, nevertheless, the action of the court in overruling the motion for a new trial was plainly right.

In the first place, Angle was not the agent of the Association at the date of the alleged forfeiture on the 2nd of December, 1900. And if the Association intended to rely on the forfeiture it was its duty to have done so then, or within a reasonable time thereafter, and not by its silence and conduct have induced the plaintiff to believe, in the light of its previous methods, that a strict performance of the clause in respect to paying the assessment, would not be insisted on, and that she was still insured.

Again, it appears that Angle acted comformably to the previous custom of the Association and in accordance with the direction of the president. And lastly, that with full knowledge of all the facts, the Association elected to retain the Young assessment, to which it was only entitled, in law or morals, on the theory that the plaintiff was still a member of the Association, and entitled to the protection of her policy. By the letter of the contract, the Association was entitled to collect the assessment for the Naff loss, "for past protection," but not the Young assessment, unless plaintiff was at its due day, nine days after the fire, still a member of the Association.

In the case of *Monger* v. *Insurance Company, supra,* this court, at page 449, quotes with approval the following language from the case of *Rowsell* v. *Equitable Aid Union,* 13 Fed. R. 840: "It is unreasonable to argue that the assured could be a member for the purpose of making contributions to others, but not a member when advantage to him or his beneficiary accrued—a member not to receive, but only to give."

Exceptions was taken to the ruling of the court in respect to

Opinion.

some of the instructions. In the main, those given seem to have fairly submitted the law applicable to the case to the jury. But if they had not done so, the ruling complained of comes within the principle announced in the case of the *Richmond Railway Company* v. *Garthright*, 92 Va. 627, 24 S. E. 267, 32 L. R. A. 220, 53 Am. St. Rep. 839, where it is said: "It is the settled rule of this court, recognized and acted upon in numerous cases, that if the court can see from the whole record that even under correct instructions a different verdict could not have been rightly found, or that the exceptant could not have been prejudiced by the erroneous instruction, it will not for such error reverse it. See also *Easley* v. *Insurance Co.*, 91 Va. 161, 21 S. E. 235; *Winfree* v. *The Bank*, 97 Va. 83, 33 S. E. 375.

There is no error in the judgment of the Circuit Court and it is affirmed.

*Affirmed.*